UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shanxi Jinze Yinhai Technology Co., Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:22-cv-00154 |
| v. | ) |
| | ) |
| The Partnerships and Unincorporated | ) |
| Associations Identified on Schedule "A", | ) |
| | ) |
| Defendants. | ) |

## Complaint

**NOW COMES** Plaintiff Shanxi Jinze Yinhai Technology Co., Ltd. ("Plaintiff" or "Shanxi"), by and through its undersigned counsel, and hereby brings this Complaint against the Partnerships and Unidentified Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### Nature of the Action

**1.** This action has been filed by Shanxi to combat e-commerce store operators who trade upon Shanxi's intellectual property by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Shanxi's patented design, U.S. Patent No. D903,800 ("Infringing Products"). Defendants create e-commerce stores operating under one or more aliases that are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products to unknowing consumers. E-commerce stores operating under the aliases share unique identifiers establishing a logical relationship between them, suggesting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more aliases to conceal both their identities and the full scope and interworking of their operation. Shanxi has filed this action to combat Defendants'

infringement of Shanxi's patented designs, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Shanxi has been and continues to be irreparably damaged from the loss of Shanxi's lawful patent rights to exclude others from, inter alia, making, using, selling, offering for sale, and importing Shanxi's patented designs as a result of Defendants' actions, and, as a result, Shanxi seeks injunctive and monetary relief.

## Parties

2. Plaintiff Shanxi Jinze Yinhai Technology Co., Ltd. is a private corporation organized under the laws of China.

3. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the aliases identified on Schedule A and/or other seller aliases not yet known to Shanxi ("Seller Aliases"). On information and belief, Defendants reside and/or operate in the People's Republic of China, or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Shanxi to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Shanxi will take appropriate steps to amend the Complaint.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338 (for claims arising under the U.S. Patent Act).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products featuring Shanxi's patented designs to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Shanxi substantial injury in the State of Illinois.

## Plaintiff's Business

6.  Plaintiff is engaged in the design, distribution, marketing, offering for sale, and sale of various industrial designs and consumer products since 2019 ("Shanxi Products"). Shanxi owns and markets Shanxi's various products under several brands, including the brands FASHIUMS and MLyzhe.

7.  The Shanxi Products are distributed and sold to consumers throughout the United States, including in Illinois and in this judicial district.

8.  Shanxi Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Products tailored after these designs are associated with the quality and innovation that the public has come to expect from Shanxi Products. Shanxi uses these designs in connection with its Shanxi Products including, but not limited to, the following patented design, herein referred to as the "Shanxi Design."

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

| Patent Number | Claim |
|---|---|
| D903,800 | FIG. 1 — FIG. 2 — FIG. 3 — FIG. 4 (U.S. Patent, Dec. 1, 2020, US D903,800 S) |





9. Shanxi is the lawful assignee of all right, title, and interest in and to the Shanxi Design. U.S. Patent No. D903,800 was lawfully issued on December 1, 2020, with named inventor Xupei Guo. Attached hereto as Exhibit 1 is a true and correct copy of the United States Patent for the Shanxi Design.

**Defendants' Unlawful Conduct**

10. Shanxi has identified numerous fully interactive, ecommerce stores, including those operating under the Seller Aliases, which are or recently were offering for sale and/or selling Infringing Products to consumers in this judicial district and throughout the United States.

11. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[2] with Department of Homeland Security seizures of infringing goods increasing more than tenfold between 2000 and 2018.[3]

---

[2] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.

[3] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020, available at
https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

12. Marketplaces like Amazon, iOffer, eBay, Wish, Joom, Vova, and AliExpress, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales that manufacturers would otherwise enjoy.

13. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong. Footwear and sporting goods, specifically, represented 17% of all seized products and the value of seized goods increased 11% to more than $1.5 billion.[4]

14. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[5]

15. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

16. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[6]

17. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly

---

[4] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.
[5] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019), available at https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislationto-
seize-counterfeit-products-and-protect-american-consumers-and-businesses.
[6] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[7]

18. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[8]

19. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[9]

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores which target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois and this judicial district.

21. Defendants collectively employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images which make it very difficult for consumers to distinguish such stores from those of an authorized retailer. Shanxi has not licensed or authorized Defendants to use the Shanxi Design and, on information and belief, none of the Defendants are authorized retailers of genuine Shanxi Products.

---

[7] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
[8] Id., at p. 39.
[9] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. At 186-187.

22. On information and belief, Defendants engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to their respective e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

23. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being halted.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and product imagery.

25. For example, an overwhelming amount of the Defendants utilize the same stock photos in promoting their infringing products. Defendants are either sharing these photos with one another or retrieving these photos from a common source. The following statistics are visible from an initial review of the Defendants online store fronts. A detailed analysis of the Defendant store fronts is attached as Exhibit 2A.

a. The Grey/White Shoe Design Image

   i. This photograph appears as such on numerous Defendants online storefronts. In a conscious effort to try to avoid detection (evidencing their willful infringement) the Defendants occasionally use photo-editing tools to remove the stone background or flip the mirror image of the shoes.



   ii. 75% (80 out 107) of Defendants' seller accounts contain this image demonstrating that they are either working in active concert, cooperating, or obtaining these images from a common unknown source. Including this copied image, the majority of these Defendants share additional copied images with other Defendants. Exhibit 2B.

b. The Red/White Shoe Design Image

   i. This photograph appears as such on numerous Defendants' online storefronts. In a conscious effort to try to avoid detection (evidencing their willful infringement)

the Defendants occasionally use photo-editing tools to add different backgrounds or flip the mirror image of the shoes.



ii. 43% (46 out 107) of Defendants seller accounts contain this image demonstrating that they are either working in active concert, cooperating, or obtaining these images from a common unknown source. Including this copied image, the majority of these Defendants share additional copied images with other Defendants. Exhibit 2B.

c. The Design Sketch Image

i. This image substantially appears as such on numerous Defendants' online storefronts.



      ii. 22% (24 out 107) of Defendants' seller accounts contain this image demonstrating that they are either working in active concert, cooperating, or obtaining these images from a common unknown source. Including this copied image, the majority of these Defendants share additional copied images with other Defendants. Exhibit 2B.

d. The Components Diagram Image

      i. This image appears on numerous Defendants' online storefronts. In a conscious effort to try to avoid detection (evidencing their willful infringement) the Defendants occasionally use photo-editing tools to change the color of the shoe being described, yet, the diagram substantively remains the same. The Defendant stores are not genuinely trying to describe the shoes presented in the image as the copied template diagram points to features that do not exist on the shoes. This technique of altering the images for nonsensical reasons is in an attempt to evade detection by the lawful intellectual property owner.



  ii. 24% (26 out 107) of Defendants' seller accounts contain this image demonstrating that they are either working in active concert, cooperating, or obtaining these images from a common unknown source. Including this copied image, the majority of these Defendants share additional copied images with other Defendants. Exhibit 2B.

26. Every single Defendant store contains at least one, often times multiple, of these overlapping identical images. The only explanation is that Defendants are somehow retrieving these images from a common source, are sharing with one another, or are being operated by a single common entity. Exhibit 2B.

27. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated and acting in concert.

28. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and will do so to avoid payment of any monetary judgment awarded to Shanxi by this Court.

30. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Shanxi, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the Shanxi Design. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, including this judicial district, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois, including this judicial district, over the Internet.

31. Defendants' infringement of the Shanxi Design in the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

32. Defendants' infringement of the Shanxi Design in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, including this judicial district, is irreparably harming Shanxi.

### Count I - Patent Infringement (35 U.S.C. § 271)

33. Plaintiff repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth herein.

34. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed in Shanxi's U.S. Patent No. D903,800.

35. Defendants have infringed Shanxi's U.S. Patent No. D903,800 through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Shanxi to suffer irreparable harm resulting from the loss of Shanxi's lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Shanxi is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

36. Shanxi is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Shanxi is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**WHEREFORE**, Plaintiff, Shanxi Jinze Yinhai Technology Co., Ltd., prays for judgment against Defendants as follows:

**A.** That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

  a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Shanxi and that include any reproduction, copy, or colorable imitation of the designs claimed in the Shanxi Design;

  b. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Shanxi Design; and

  c. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b) above.

B. Entry of an Order that, upon Shanxi's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Joom, and Dhgate (collectively, "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the ornamental designs claimed in the Shanxi Design;

C. That Shanxi be awarded such damages as Shanxi shall prove at trial against Defendants that are adequate to compensate Shanxi for Defendants' infringement of the Shanxi Design, but in no event less than a reasonable royalty for the use made of the inventions by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

D. That the amount of damages awarded to Shanxi to compensate it for infringement of the Shanxi Design be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

E. In the alternative, that Shanxi be awarded all profits realized by Defendants from their infringement of the Shanxi Design, pursuant to 35 U.S.C. § 289;

F. That Shanxi be awarded Shanxi's reasonable attorneys' fees and costs; and

G. Award any and all other relief that this Court deems just and proper.

Dated: January 10, 2022

Respectfully submitted,

/s/Ilya G. Zlatkin
Ilya G. Zlatkin (ARDC No. 6314344)
Zlatkin Wong LLP
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zlatkinwong.com
Ph. (312) 809-8022
Fax (312) 809-6918

*Counsel for Plaintiff Shanxi Jinze Yinhai Technology Co., Ltd.*